UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| Causam Enterprises, Inc.,<br><br>*Plaintiff*,<br><br>v.<br><br>Jupiter Power LLC, Jupiter Power Energy Management LLC, Crossett Power Management LLC, St. Gall Energy Storage I LLC, St. Gall Energy Storage II LLC, House Mountain LLC, Swoose LLC, Flower Valley LLC, Flower Valley II LLC, and Triple Butte LLC,<br><br>*Defendants*. | Case No. 26-cv-00113<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR PATENT INFRINGEMENT**

1.     Plaintiff Causam Enterprises, Inc. ("Causam") brings this civil action for infringement of U.S. Patent Nos. 11,782,470, 10,429,871, 11,126,213, 12,461,547, and 11,747,849 (collectively as "The Asserted Patents") under 35 U.S.C. § 271 *et seq.* against Defendants Jupiter Power LLC; Jupiter Power Energy Management LLC, which is registered with the Energy Reliability Council of Texas ("ERCOT") as a Qualified Scheduling Entity ("Jupiter QSE"); and the following Jupiter entities registered with ERCOT as Jupiter Resource Entities and Jupiter Decision Making Entities (collectively, the "Jupiter RE/DMEs"), Crossett Power Management LLC, St. Gall Energy Storage I LLC, St. Gall Energy Storage II LLC, House Mountain LLC, Swoose LLC, Flower Valley LLC, Flower Valley II LLC, and Triple Butte LLC. All Defendants are referred to collectively as "Jupiter" or "Defendants."

1

## THE PARTIES

2.    Plaintiff Causam Enterprises, Inc. is a private corporation organized and existing under the laws of Delaware, with its principal place of business at Raleigh, North Carolina. Causam develops and provides energy focused technologies, which are patented in more than 100 patents: technologies cover two-way demand response control, secure grid messaging and dispatching, aggregation of behind-the-meter resources, and the financial measurement, verification, and settlement of energy transactions. Causam's goal is to innovate and create the power grid of tomorrow.

3.    Causam is the exclusive owner of all rights, title, and interest in and to the Asserted Patents, pursuant to the recorded assignment of those patents by the inventors and previous assignees. Causam has the right to bring this suit to recover damages for any current or past infringement of the Asserted Patents.

4.    On information and belief, Defendant Jupiter Power LLC is a Texas Limited Liability Company with its headquarters and principal place of business in this District at 1211 E. 4th Street, Suite 120, Austin, TX 78702.

5.    On information and belief, Defendant Jupiter Power LLC is the parent of and directly and wholly owns Defendants Jupiter Power Energy Management LLC, Crossett Power Management LLC, Crossett Power Management II LLC, St. Gall Energy Storage I LLC, St. Gall Energy Storage II LLC, House Mountain LLC, Swoose LLC, Flower Valley LLC, Flower Valley II LLC, and Triple Butte LLC.

6.    On information and belief, Jupiter QSE Defendant Jupiter Power Energy Management LLC is a Delaware Limited Liability Company with its headquarters and principal

place of business in this District at 211 E 7th Street, Suite 620, Austin, TX 78701. The Jupiter QSE Defendant is registered with ERCOT as a QSE under DUNS number 1192783842000.[1]

7.      On information and belief, Jupiter RE/DME Defendant Crossett Power Management LLC is a Delaware Limited Liability Company with its headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE Defendant operates the Crossett Project in this District in Crane County, Texas.[2] This Defendant is registered with ERCOT as an RE and DME. Crossett Power Management LC is registered as a DME under DUNS number 1176978127000.[3]

8.      On information and belief, Jupiter RE/DME Defendants St. Gall Energy Storage I LLC and St. Gall Energy Storage II LLC are Delaware Limited Liability Companies with their headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE/DME Defendants jointly operate the St. Gall Project in this District in Pecos County, Texas.[4] Each Defendant is registered with ERCOT as an RE and DME. St. Gall Energy Storage I is registered as a DME under DUNS number 1189325957000.[5]

9.      On information and belief, Jupiter RE/DME Defendant House Mountain LLC is a Delaware Limited Liability Company with its headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE/DME Defendant

---

[1] ERCOT QSE Entity List. https://www.ercot.com/mp/data-products/data-product-details?id=NP16-474-M.

[2] https://www.jupiterpower.io/post/jupiter-power-announces-commercial-operations-of-its-200mw-crossett-facility-expanding-its-portfolio-to-over-320mw-of-battery-energy-storage

[3] RE Decision Making Entity List. https://www.ercot.com/mp/data-products/data-product-details?id=NP3-988-ER.

[4] https://www.jupiterpower.io/jupiter-power-our-projects#.

[5] RE Decision Making Entity List. https://www.ercot.com/mp/data-products/data-product-details?id=NP3-988-ER.

operates the House Mountain Project in this District in Brewster County, Texas. *See* Fn. 4. This Defendant is registered with ERCOT as an RE and DME. House Mountain LLC is registered as a DME under DUNS number 1174752247000. *See* Fn. 3.

10.     On information and belief, Jupiter RE/DME Defendant Swoose LLC is a Delaware Limited Liability Company with its headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE/DME Defendant operates the Swoose I Project in this District in Ward County, Texas. *See* Fn. 4. This Defendant is registered with ERCOT as an RE and DME. Swoose LLC is registered as a DME under DUNS number 1174467957000. *See* Fn. 3.

11.     On information and belief, Jupiter RE/DME Defendant Flower Valley I LLC is a Delaware Limited Liability Company with its headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE/DME Defendant operates the Flower Valley I Project in this District in Reeves County, Texas. *See* Fn. 4.  This Defendant is registered with ERCOT as an RE and DME. Flower Valley I LLC is registered as a DME under DUNS number 1174463247000 *See* Fn. 3.

12.     On information and belief, Jupiter RE/DME Defendant Flower Valley II LLC is a Delaware Limited Liability Company with its headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE/DME Defendant operates the Flower Valley II Project in this District in Reeves County, Texas.[6] This Defendant is registered with ERCOT as an RE and DME. Flower Valley II LLC is registered as a DME under DUNS number 1178033247000. *See* Fn. 3.

---

[6] https://www.jupiterpower.io/post/jupiter-powers-largest-utility-scale-battery-storage-facility-to-date-flower-valley-ii-enters-commercial-operations-in-reeves-county-texas.

13. On information and belief, Jupiter RE/DME Defendant Triple Butte LLC is a Delaware Limited Liability Company with its headquarters and principal place of business in this District at 1108 Lavaca Street, Suite 110-349, Austin, TX 78701. Jupiter RE/DME Defendant operates the Triple Butte I Project in this District in Reeves County, Texas. *See* Fn. 4. This Defendant is registered with ERCOT as RE and DME. Triple Butte LLC is registered as a DME under DUNS number 1174464747000. *See* Fn. 3.

14. The Jupiter QSE Defendant serves as the market-facing representative for the Jupiter RE/DMEs in the ERCOT market and is responsible for exercising decision-making authority over how those resources participate in the energy market, receiving and executing ERCOT dispatch and operating instructions, and managing resources' enrollment in ERCOT ancillary services. The Jupiter QSE performs financial settlement with ERCOT on behalf of the Jupiter RE/DMEs and other grid resources it represents. The Jupiter RE/DME Defendants, as the Resource Entity and Decision-Making Entity, are the registered owners and operators of the generation and storage resources. The Jupiter RE/DME Defendants are responsible as REs, *inter alia*, for: operating and maintaining the assets, providing modeling, telemetry, and operational data, maintaining compliant staffing and procedures, designating a QSE to represent them in their market participation, exercising decision-making authority over how the resources are offered in the market, and determining how each resource responds to ERCOT dispatch instructions to ensure reliable and compliant operation. As the Decision-Making Entity, the RE/DME Defendants are responsible for financial settlement and control over how a Resource is dispatched and priced.[7] On information and belief, Jupiter Power LLC oversees, controls, and coordinates the above activities.

---

[7] ERCOT Nodal Protocols Section 23 Form C: Managed Capacity Declaration (8/1/23). https://www.ercot.com/files/docs/2019/05/28/23C-080123_Nodal.docx.

**JURISDICTION AND VENUE**

15.     This is an action for patent infringement arising under the Patent Laws of the United States, including 35 U.S.C. § 271 *et seq*.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

16.     This Court has general personal jurisdiction over Defendants because Defendants' contacts with this state are so continuous and systematic as to render them essentially at home in this state. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). A corporation is "essentially at home" at its place of incorporation or principal place of business. *Callier v. Wide Merch. Inv., Inc.*, 671 F. Supp. 3d 736, 742 (W.D. Tex. 2023).

17.     Defendants are "essentially at home" in this District because they are either incorporated in or have their principal place of business in this District.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 28 U.S.C. § 1400(b).

19.     On information and belief, Jupiter Defendants have regular and systemic contacts within this District and have committed acts of infringement within this District.  For example, Jupiter Defendants have their principal corporate office located in this District.

20.     Defendants have committed acts of infringement within this District.  For example, on information and belief, Defendants use the Accused Instrumentalities in this District in manners that practice the Asserted Patents, including the operation and control of power-generation assets, such as battery energy storage systems, located within this District, and the execution of dispatch instructions at those assets.

## PLAINTIFF'S PATENTED INNOVATIONS

21.     The U.S. Patent No. 11,782,470 ("'470 Patent"), titled "Method and apparatus for actively managing electric power supply for an electric power grid," was duly issued by the United States Patent and Trademark Office ("USPTO") on October 10, 2023. The '470 Patent claims priority to U.S. Provisional Application No. 13/549,429, filed July 14, 2012.  A true and correct copy of the '470 Patent is attached hereto as Exhibit 1.

22.     The named inventor of the '470 Patent is Joseph W. Forbes, Jr.

23.     The '470 Patent is directed to the field of electrical power control systems, and more particularly to systems, methods, and apparatuses for actively managing the supply of electric power across an electric power grid, including grid load balancing, power supply integration, and operating reserve management.[8] At the time of the invention, conventional electric grid management systems lacked effective means for dynamically coordinating, controlling, and aggregating power supply and load resources across disparate grid elements in real time, particularly in systems involving distributed generation sources, storage devices, and variable load-consuming devices. *Id.* at 1:34-44. These shortcomings resulted in grid instability, inefficient utilization of available power resources, and limited ability to generate operating reserves necessary for reliable grid operations. The '470 Patent addresses these shortcomings by providing novel systems and methods for actively managing and prioritizing electric power supply and load contributions, including mechanisms for tracking power consumption and supply values, communicating power control commands over a network, and coordinating distributed grid elements to create operating reserves while maintaining grid stability. *Id.* at 3:55-4:21.

---

[8] *See* Exhibit 1, '470 Patent, 1:23-30.

7

24.    In one exemplary embodiment, the '470 Patent discloses a system for managing and supplying power on an electric grid that includes a server with a command processor, a Coordinator in networked communication with the server, and a plurality of grid elements that consume, generate, or store electric power. *Id.* at 4:22-45. In this embodiment, the Coordinator manages communications between the server and the grid elements and facilitates the exchange of messages over an IP-based or proprietary based messaging network. *Id.*

25.    Each claim of the '470 Patent recites a distinct and independent invention, and no single claim is representative of all claims of the '470 Patent.

26.    The '470 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282. The claims of the '470 Patent satisfy all requirements for patentability and patenting under 35 U.S.C., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

27.    All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '470 Patent.

28.    The U.S. Patent No. 11,126,213 ("'213 Patent"), titled "Method and Apparatus for Actively Managing Electric Power Supply for an Electric Power Grid," was duly and legally issued by USPTO on September 21, 2021. The '213 Patent claims priority to U.S. Patent Application No. 13/549,429, filed July 14, 2012. A true and correct copy of the '213 Patent is attached hereto as Exhibit 2.

29.    The named inventor of the '213 Patent is Joseph W. Forbes, Jr.

30.    The '213 Patent is directed to the field of electrical power control systems, and more particularly to systems, methods, and apparatuses for actively managing power supply from electric power generation sources and storage devices for introduction to an electric power grid or

microgrid, and for creating operating reserves for utilities and market participants.[9] At the time of the invention, conventional grid systems could not dynamically coordinate, control, and aggregate distributed resources and load-consuming devices to provide grid stability, settlement-quality telemetry, and operating reserves. *Id.* at 1:31-44; 5:25-34; Abstract. The '213 Patent addresses these shortcomings through a Coordinator-managed, IP-based communication and control architecture integrating servers, active load/supply directors, and a multiplicity of grid elements. *Id.* at Abstract.

31.     In one exemplary embodiment, the '213 Patent discloses a system for managing and supplying power on an electric power grid that includes a server comprising a command processor to initiate power control commands, a Coordinator in networked communication with the server, and a plurality of grid elements that consume, generate, or store power; the Coordinator manages communications between the server and grid elements and functions as an event manager to issue power control event instructions. Communications are IP-based and may also employ proprietary messaging over networks such as Ethernet, cellular, and other standards based links. *Id.* at 8:21-45.

32.     Each claim of the '213 Patent recites a distinct and independent invention, and no single claim is representative of all claims of the '213 Patent.

33.     The '213 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282. The claims of the '213 Patent satisfy all requirements for patentability and patenting under 35 U.S.C., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

---

[9] *See* Exhibit 2, '213 Patent, Abstract.

34. All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '213 Patent.

35. The U.S. Patent No. 10,429,871 (the "'871 Patent"), titled "Method and Apparatus for Actively Managing Electric Power Supply for an Electric Power Grid," was duly and legally issued by the USPTO on October 1, 2019. The '871 claims priority to U.S. Patent Application No. 13/549,429, filed July 14, 2012. A true and correct copy of the '871 Patent is attached hereto as Exhibit 3.

36. The named inventor of the '871 Patent is Joseph W. Forbes, Jr.

37. The '871 Patent is directed to the field of electrical power control systems, and more particularly to systems, methods, and apparatuses for actively managing electric power supply from generation sources and storage devices for introduction to an electric power grid or microgrid, and for creating operating reserves for utilities and market participants.[10] The specification explains that conventional grid architectures lack the ability to dynamically coordinate distributed supply resources with sufficient telemetry, verification, and control to support grid stability and market settlement, and that the disclosed invention addresses these deficiencies through an IP-based, coordinated control architecture. *Id.* at 1:26–36; 7:50-67.

38. In one exemplary embodiment, the '871 Patent discloses a system for managing and supplying power on an electric power grid that includes: (i) a server having a command processor operable to initiate or receive power control commands; (ii) a Coordinator in networked communication with the server; and (iii) a plurality of grid elements that consume, generate, or store power. The Coordinator manages IP-based communications among the server and the grid elements, tracks power availability and power supply value, and routes control and dispatch

---

[10] Exhibit 3, '871 Patent, at 1:15-24.

messages to enable real-time or near real-time supply, curtailment, and operating reserve creation. *Id.* at 8:15-43.

39.     Each claim of the '871 Patent recites a distinct and independent invention, and no single claim is representative of all claims of the '871 Patent.

40.     The '871 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282. The claims of the '871 Patent satisfy all requirements for patentability and patenting under 35 U.S.C., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

41.     All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '871 Patent.

42.     The U.S. Patent No. 12,461,547 (the "'547 Patent"), titled "Method and Apparatus for Actively Managing Electric Power Supply for an Electric Power Grid," was duly and legally issued by the USPTO on November 4, 2025. The '547 Patent claims priority to U.S. Patent Application No. 13/549,429, filed July 14, 2012. A true and correct copy of the '547 Patent is attached hereto as Exhibit 4.

43.     The named inventor of the '547 Patent is Joseph W. Forbes, Jr.

44.     The '547 Patent is directed to the field of electrical power control and grid management systems, and more particularly to systems and methods for actively managing electric power supplied to an electric power grid from one or more distributed power supply sources.[11] The specification explains that conventional grid systems lack the capability to efficiently integrate and manage distributed generation and storage resources for supplying power to the grid in a manner that satisfies utility-scale operational and market requirements. *See id.* 1:36-50. The

---

[11] *See* Exhibit 4, '547 Patent, at Abstract.

disclosed invention addresses these deficiencies through a coordinator-based architecture that manages communications, power availability data, and dispatch instructions between servers and power supply sources. *See id.* at Abstract.

45.     In one exemplary embodiment, the '547 Patent discloses a system for managing power supplied to an electric power grid that includes at least one server, a coordinator, and at least one power supply source. *See id.* The coordinator is configured to manage communications between the server and the power supply source, wherein the server is operable to initiate power commands. *See id.* The communications include information identifying an actual amount of power supply available for the electric power grid from the power supply source, and the power supply source is operable to provide power to the electric power grid based on the power commands. *See id.*

46.     Each claim of the '547 Patent recites a distinct and independent invention, and no single claim is representative of all claims of the '547 Patent.

47.     The '547 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282. The claims of the '547 Patent satisfy all requirements for patentability and patenting under 35 U.S.C., including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

48.     All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '547 Patent.

49.     The U.S. Patent No. 11,747,849 (the "'849 Patent"), titled "System, method, and apparatus for electric power grid and network management of grid elements," was duly and legally issued by the USPTO on September 5, 2023. The '849 Patent claims priority to U.S. Patent

Application No. 13/563,535, filed July 31, 2012. A true and correct copy of the '849 Patent is attached hereto as Exhibit 5.

50.      The named inventor of the '849 Patent is Joseph W. Forbes, Jr.

51.      The '849 Patent is directed to the field of electrical power control and grid management systems, and more particularly to systems and methods for actively managing electric power supplied to an electric power grid from one or more distributed power supply sources.[12] The specification explains that conventional grid systems are primarily directed to load curtailment and lack the capability to efficiently introduce and coordinate distributed generation and storage resources as sources of supply for the electric power grid in compliance with utility and market requirements. *See id.* at 1:37-51. The disclosed invention addresses these deficiencies through a coordinator-based architecture that manages communications, power availability data, and control or dispatch instructions between servers and power supply sources. *See id.* at Abstract.

52.      In one exemplary embodiment, the '849 Patent discloses a system for managing power supplied to an electric power grid from a plurality of power supply sources, including at least one server and a coordinator. *Id.* at 10:62-11:1. The coordinator manages communications between the at least one server and the plurality of power supply sources, wherein the server is operable to initiate power commands. *See id.* The communications comprise an actual amount of power supply available for the electric power grid from the plurality of power supply sources, and the plurality of power supply sources are operable to provide power supply to the electric power grid based on the power commands. *See id.*

53.      Each claim of the '849 Patent recites a distinct and independent invention, and no single claim is representative of all claims of the '849 Patent.

---

[12] *See* Exhibit 5,'849 Patent, Abstract.

54. The '849 Patent is valid and enforceable and enjoys a statutory presumption of validity pursuant to 35 U.S.C. § 282. The claims of the '849 Patent satisfy all requirements for patentability and patenting under Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and 112.

55. All requirements under 35 U.S.C. § 287 have been satisfied with respect to the '849 Patent.

## THE ACCUSED INSTRUMENTALITIES

56. Jupiter Defendants provide for battery energy storage systems ("BESS") and demand response systems and, without authorization, use third-party EMS software, including VaultOS, and Defendants' own internal EMS software, including DOPTOP and Minerva, in connection with those resources in manners that infringe the Asserted Patents. Defendants' infringing technologies and services include, but are not limited to, the systems and methods by which Defendants use the Energy Vault's VaultOS, DOPTOP and Minerva and related modules, features, and functionalities, as well as prior versions and substantially similar functionalities that are described herein (collectively, "Accused EMS Software"), in connection with Defendants' BESS resources (collectively, the "Accused Instrumentalities").

57. The Accused EMS Software used by Jupiter include all EMS utilized by Jupiter to communicate with ERCOT in its capacity as a Qualified Scheduling Entity ("QSE"),  and to coordinate and control Jupiter's energy resources. For instance, Defendants use Vault OS in communication with their QSE server. Vault OS is advertised by its third-party provider, Energy Vault, as an EMS software with a cloud-based component and an on-site controller component that

14

together coordinate, monitor, and control a plurality of BESS assets.[13] The VaultOS platform utilizes SCADA-class industrial control protocols (e.g., ICCP, DNP3, Modbus/TCP) to communicate over Internet-Protocol ("IP") networks with market-facing systems and control centers; process telemetry, control, and dispatch messages; perform real-time assessment of available power; and support participation in organized electricity markets, including ERCOT. *See*



*id.*

58.    By way of example, Jupiter Power's St. Gall Battery Energy Storage System is a 200 MWh installation comprising 76 fully integrated B-VAULT AC battery containers equipped



---

[13] https://www.energyvault.com/hubfs/VaultOS_Datasheet-1.pdf.

with Energy Vault's VaultOS platform and connected to the ERCOT grid. It is located near Fort Stockton in Pecos County, Texas.[14] This installation exemplifies a plurality of power-supply sources coordinated under a common energy management system to supply power to an electric power grid.

59.    The Defendant's internal Accused EMS software includes DOPTOP and Minerva. DOPTOP is a "dispatch optimization and operating platform", absorbing "historical, real-time and forward-looking market data" and "recommends dispatch decisions to [their] trading group."[15] Minerva is a price forecasting and AI optimization decision software. Minerva uses "machine learning and artificial intelligence" to provide price forecasting capabilities and visibility into the grid. *Id.* The Defendants use both the third party (VaultOS) and internal Accused EMS Software to manage its battery and demand response assets.

60.    Under ERCOT protocols, ERCOT issues grid-wide dispatch instructions, such as primary frequency controls (e.g. regulate up or regulate down), to Jupiter's designated QSE, which acts as the market-facing interface on behalf of Jupiter's RE/DMEs that own and control the BESS assets. Jupiter's QSE and RE/DMEs use the Accused EMS Software to receive, translate, prioritize and execute dispatch instructions across the BESS resources.

---

[14] https://www.energyvault.com/projects/st-gall.
[15] https://www.jupiterpower.io/.



**Resource Real-Time communications**

QSEs communicate with ERCOT through Inter-Control Center Communications Protocol (ICCP)
- SCADA telemetry from Resources
- ERCOT instructions to Resources [16]

61.    The VaultOS on-site controller, operating in conjunction with Defendants' internal Accused EMS Software, including DOPTOP and/or Minerva,  communicates directly with the BESS assets to collect real-time telemetry and execute control actions. *See* Fn. 19. The cloud-based component aggregates the telemetry, evaluates operating constraints, determines dispatch priorities, and coordinates control actions across a portfolio of BESS assets. *See id.* The on-site and cloud components engage in two-way IP-based communications to effect real-time grid operations and market participation. *See id.*

62.    As part of its ordinary and intended operation, VaultOS in combination with DOPTOP and/or Minerva, exchanges IP-based messages bearing operational telemetry, which are transmitted upstream through the Jupiter QSE to ERCOT for use in real-time control, dispatch, and market settlement. This telemetry includes state of charge (MWh), available discharge capacity (MW), operating limits, and other revenue-grade measurements—between the BESS assets, Jupiter QSE, and ERCOT. For example, between St. Gall project BESS assets, Jupiter

---

[16] https://www.ercot.com/files/docs/2020/03/02/2020_03_R301_M2_Resources_Requirements__2_.pdf.

Power Management LLC, and ERCOT. These communications enable the real-time determination and communication of the actual amount of power available from each BESS resource for grid dispatch                                  and                                  settlement.



63.    VaultOS, working in conjunction with DOPTOP and/or Minerva, further operates to prioritize and coordinate which BESS resources supply power in response to ERCOT dispatch instructions received via the QSE. According to Energy Vault, the VaultOS software "leverages AI, machine learning, and analytics for fleet wide simulation and dispatch optimization", which involves determining which BESS resources will respond to a dispatch instruction.[18] These AI and machine learning capabilities may be provided by VaultOS, DOPTOP, Minerva, or any combination thereof. In response, the Accused EMS Software selects and prioritizes individual BESS assets and issues corresponding control commands to on-site controllers to execute dispatch. *See id.*

---

[17] https://www.energyvault.com/products/vault-manager-battery-asset-management.
[18] https://www.energyvault.com/products/vault-os-energy-management-system.

18

64.    Through this architecture, the Accused EMS Software–including VaultOS, DOPTOP, and/or Minerva–manages IP-based messaging between the QSE systems and site-level controllers, translating ERCOT/QSE dispatch instructions into resource-specific control messages that identify the dispatched resource(s), specify assigned MW values or participation factors, and govern the timing and extent of power delivery. *See* Fn. 21 (displaying SCADA and ICCP ("IP-based") communications between BESS, QSE, and ERCOT). Internally, the Accused EMS Software continuously exchanges telemetry and control messages with the BESS assets to verify performance, adjust dispatch, and report measured power values back through the QSE for grid control and settlement with ERCOT.

65.    The Accused EMS Software also support market bidding and financial settlement by collecting, managing, and reporting revenue-grade operational and metering data from Jupiter's BESS resources. This data is communicated via IP-based messaging from VaultOS, DOPTOP, and/or Minerva, in order to submit bids and offers, transmit dispatch instructions, and perform settlement with ERCOT on behalf of Jupiter's resources. For example, the Accused EMS Software monitors and controls daily operations of the St. Gall project to advance market bidding and dispatch execution.

66.    At all relevant times, the Jupiter QSE uses and operates the Accused EMS Software at the direction and for the benefit of the Jupiter RE/DMEs and with the support and encouragement provided by Defendant Jupiter Power LLC. Accused EMS Software, including cloud-based and on-site components is used to monitor, control, prioritize, and dispatch their grid-connected BESS assets and to communicate telemetry, availability, and performance data for market participation and settlement. Defendants' coordinated and interrelated use of the Accused EMS Software in connection with their BESS resources constitutes use of the Accused

19

Instrumentalities and performance of the accused systems and methods that infringe the Asserted Patents.

67. The foregoing description is exemplary and non-limiting. The Accused Products include past, current, and future versions, updates, and configurations of Energy Vault's VaultOS, Jupiter's DOPTOP and Minerva software, and other EMS software used by Jupiter, as well as any materially similar products and services that implement the same or substantially the same features and functionalities described above. This definition encompasses associated modules, integrations, and auxiliary services that are part of, bundled with, or used to enable the accused functionality, including IP-based telemetry and control, EMS orchestration, market bidding and dispatch workflows, and QSE market integration within ERCOT and other organized markets.

**FIRST CAUSE OF ACTION**
**INFRINGEMENT OF THE '470 PATENT**

68. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

69. Defendants are not licensed (expressly or impliedly), nor are they otherwise authorized to make, use, offer for sale, or sell any products or services that embody the inventions of the '470 Patent.

70. Defendants have infringed and continue to infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '470 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

71. The Accused Instrumentalities, including features of Energy Vault's VaultOS and Jupiter's DOPTOP and Minerva software in connection with Jupiter's energy assets, practice each element of at least claim 1 of the '470 Patent.

72.      For example, the Accused Instrumentalities include the use of VaultOS, an EMS software in communication with VaultOS' QSE server that manages battery storage and other resources based on tracked real-time energy production, market prices, and other relevant telemetry. VaultOS features the coordinator that orchestrates Jupiter's EMS architecture, facilitating communication over IP-based networks between at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter (including Jupiter's QSE server) and interoperable with VaultOS, and site-level controllers that control BESS assets.

## The Energy Vault Approach: VaultOS™ and Speed Through Simulation

VaultOS™ is Energy Vault's Power Plant Controller and Energy Management System, providing real-time monitoring, operational control, and optimized dispatch for energy storage and generation assets. VaultOS™ controls everything at an energy storage site, from monitoring individual cells to full-scale power dispatch. As a hardware-agnostic solution, it integrates with any inverter, battery, or balance-of-plant equipment (sensors, HVAC, chillers, fire protection systems). Managing extensive onsite equipment requires high-resolution data down to the battery cell level. On projects with hundreds of thousands of cells, this can involve handling millions of data points per second, a topic we'll explore in an upcoming blog post.

The cost of late-stage discoveries is staggering. Delays can mean millions in lost revenue and penalties. To solve this, we designed and built VaultOS™ to de-risk project execution. Our solution: VaultOS™ Real-Time Plant Digital Twin, a patented software-based platform that creates a full virtual replica of an energy storage site to enable full end-to-end testing of the PPC and EMS software with simulated site equipment months or even years prior to deployment. The software tested in our simulation is "byte for byte" identical to the fielded software. The software runs in real-time as if it's talking to fielded equipment during the simulation. [19]

73.      Through these IP-based communications, VaultOS transmits revenue-grade telemetry reflecting the actual amount of power available from each BESS, including State of Charge and Maximum Operating Discharge Power Limit, measured in megawatts. This telemetry represents the real-time power supply available to the electric power grid based on revenue-grade metrology. For example, Energy Vault lists performance reporting metrics for VaultOS including "Capacity, RTE, Energy Throughput, MTBF, MTTR."[20]

---

[19] https://www.energyvault.com/newsroom/reducing-execution-risk-in-energy-storage-with-vaultos-ems-and-real-time-plant-digital-twin.

[20] https://www.energyvault.com/hubfs/VaultOS_Datasheet-1.pdf.

74.    Jupiter implements a QSE server in communication with VaultOS and/or DOPTOP software to issue power commands through VaultOS directing the BESS to discharge electricity to the electric power grid. Upon receipt of these commands, the BESS supply power to the grid in accordance with the dispatch instructions transmitted via VaultOS.

75.    VaultOS and/or Minerva further prioritize the order in which multiple BESS supply power based on operational characteristics, including State of Charge. Using its cloud-based optimization engine and site-level controllers, VaultOS and/or Minerva determines dispatch order among available resources to execute grid services and manage battery performance.

76.    Accordingly, Jupiter's use of the VaultOS platform, DOPTOP, and Minerva in connection with Jupiter's BESS assets, performs IP-based communication of available power, dispatch of power supply sources based on received commands, and prioritization of resource dispatch based on source characteristics, thereby infringing at least claim 1 of the asserted patent.

77.    Defendants have been aware of the '470 Patent since at least the filing of this Complaint.

78.    Defendants' use of the Accused Instrumentalities and corresponding systems and services directly infringe at least claim 1 of the '470 Patent, literally or under the doctrine of

---

[21]https://www.energyvault.com/hubfs/VaultOS_Datasheet-1.pdf.

22

equivalents, at least by using the Accused Instrumentalities and corresponding systems and services.

79.    Since at least filing of this Complaint, Defendants have actively induced and continue to induce infringement of at least claim 1 of the '470 Patent by encouraging customers, market participants, and resource entities to use the Accused Instrumentalities—including the Accused EMS Software and related systems and services—in a manner that infringes the asserted claims. Defendants market and promote DOPTOP and Minerva as an energy management and optimization platform designed to (1) process real-time market data to inform dispatch decisions, and (2) utilize machine learning and artificial intelligence to forecast pricing and optimize related decisions. For example, Jupiter states that "DOPTOP absorbs historical, real-time and forward-looking market data and recommends dispatch decisions."[22] Further, Jupiter markets Minerva as a "state of the art price forecasting and AI informing optimization decision[maker]", Minerva "deploy[s] the latest in machine learning and artificial intelligence." *Id.* Additionally, on information and belief, Defendant Jupiter Power LLC and the Jupiter RE/DMEs intentionally induce the Jupiter QSE's infringement of this patent by providing training, technical support, personnel, grid resources, and computer and networking infrastructure to facilitate and encourage the use of infringing Accused EMS Software. The Jupiter QSE operates as the agent of the Jupiter RE/DMEs, acting at their direction and on their behalf in carrying out the accused activities. The Jupiter RE/DMEs possess a direct financial stake in the Jupiter QSE's infringing conduct, as the RE/DMEs derive economic benefit from the generation and sale of electricity that is managed, scheduled, and dispatched through the use of the Accused EMS Software.

---

[22] https://www.jupiterpower.io/.

80.    Defendants specifically intend that customers—including resource owners, operators, and market participants—use Accused EMS Software in conjunction with QSE/DME servers, site controllers, and BESS to register and control grid elements, transmit revenue-grade telemetry reflecting available or dispatched power, and dispatch and prioritize power supplied to the electric power grid, thereby resulting in direct and indirect infringement of the asserted patents. Defendants encourage, instruct, and direct third parties to perform the claimed system and methods by providing Accused EMS Software, making DER.OS, DOPTOP, and Minerva functionality available through cloud-based platforms and on-site controllers, and integrating DER.OS, DOPTOP, and Minerva with grid operators and energy markets such as ERCOT. *See id.*

81.    Defendants' acts of induced infringement have caused and continue to cause direct infringement of at least claim 1 of the '470 Patent by Defendants' customers and partners, resulting in damage to Plaintiff. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

82.    Plaintiff, its predecessors-in-interest, and/or any licensees have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '470 Patent.

### SECOND CAUSE OF ACTION
### <u>INFRINGEMENT OF THE '213 PATENT</u>

83.    Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

84.    Defendants are not licensed (expressly or impliedly), nor are they otherwise authorized to make, use, offer for sale, or sell any products or services that embody the inventions of the '213 Patent.

24

85. Defendants have infringed and continue to infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '213 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

86. The Accused Instrumentalities, including features of Energy Vault's VaultOS and Jupiter's DOPTOP and Minerva software in connection with Jupiter's energy assets, practice each element of at least claim 1 of the '213 Patent.

87. For example, the Accused Instrumentalities include the use of VaultOS, an EMS software system configured to manage power supplied to an electric power grid from a plurality of power supply sources, including BESS, based on real-time operational data and market conditions. VaultOS features the coordinator that orchestrates Jupiter's EMS architecture, facilitating communication over IP-based networks between at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter (including Jupiter's QSE server) and interoperable with VaultOS, and site-level controllers that control BESS assets.

88. Jupiter uses VaultOS, DOPTOP, and/or Minerva to manage its resources. VaultOS includes grid elements constructed and configured for IP-based communication, via a coordinator comprising cloud-based software and site-level controllers, with at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter and interoperable VaultOS, DOPTOP, and/or Minerva, and at least one database. Jupiter implements a QSE server in communication with VaultOS and/or DOPTOP to receive grid dispatch instructions and initiate power commands.

89. In response to the power commands, VaultOS dispatches one or more energy resources by controlling BESS to discharge stored electrical energy to the electric power grid and

by coordinating and managing IP-based communications between the QSE server and the power supply sources through cloud-based software and site-level controllers.

90.    VaultOS in conjunction with DOPTOP and/or Minerva further manages multiple power storage devices that are automatically registered with the coordinator, prioritizes the order in which the power supply sources deliver power based on operational characteristics such as State of Charge, and supports real-time or near real-time settlement of compensation for power supplied to the electric power grid using revenue-grade metering data communicated to the QSE server.

91.    Accordingly, Jupiter's use of the VaultOS platform, DOPTOP, and/or Minerva in connection with Jupiter's BESS assets, performs IP-based communication of available power, dispatch of power supply sources based on received commands, and prioritization of resource dispatch based on source characteristics, thereby infringing at least claim 1 of the asserted patent.

92.    Defendants have been aware of the '213 Patent since at least the filing of this Complaint.

93.    Defendants' use of the Accused Instrumentalities and corresponding systems and services directly infringe at least claim 1 of the '213 Patent, literally or under the doctrine of equivalents, at least by using the Accused Instrumentalities and corresponding systems and services.

94.    Since at least filing of this Complaint, Defendants have actively induced and continue to induce infringement of at least claim 1 of the '213 Patent by encouraging customers, market participants, and resource entities to use the Accused Instrumentalities—including the Accused EMS Software and related systems and services—in a manner that infringes the asserted claims. Defendants market and promote DOPTOP and Minerva as an energy management and optimization platform designed to (1) process real-time market data to inform dispatch decisions,

and (2) utilize machine learning and artificial intelligence to forecast pricing and optimize related decisions. For example, Jupiter states that "DOPTOP absorbs historical, real-time and forward-looking market data and recommends dispatch decisions."[23] Further, Jupiter markets Minerva as a "state of the art price forecasting and AI informing optimization decision[maker]", Minerva "deploy[s] the latest in machine learning and artificial intelligence." *Id.* Additionally, on information and belief, Defendant Jupiter Power LLC and the Jupiter RE/DMEs intentionally induce the Jupiter QSE's infringement of this patent by providing training, technical support, personnel, grid resources, and computer and networking infrastructure to facilitate and encourage the use of infringing Accused EMS Software. The Jupiter QSE operates as the agent of the Jupiter RE/DMEs, acting at their direction and on their behalf in carrying out the accused activities. The Jupiter RE/DMEs possess a direct financial stake in the Jupiter QSE's infringing conduct, as the RE/DMEs derive economic benefit from the generation and sale of electricity that is managed, scheduled, and dispatched through the use of the Accused EMS Software.

95. Defendants specifically intend that customers—including resource owners, operators, and market participants—use the Accused EMS Software in conjunction with QSE servers, site controllers, and Battery Energy Storage Systems to initiate power commands, coordinate and manage IP-based communications, communicate revenue-grade telemetry reflecting available power supply, dispatch power to the electric power grid, and prioritize dispatch order among multiple power supply sources based on characteristics such as State of Charge and operational constraints, and supports real-time financial settlement with ERCOT as described herein.

---

[23] https://www.jupiterpower.io/.

27

96.     Defendants' acts of induced infringement have caused and continue to cause direct infringement of at least claim 1 of the '213 Patent by Defendants' customers and partners, resulting in damage to Plaintiff. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

97.     Plaintiff, its predecessors-in-interest, and/or any licensees have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '213 Patent.

### THIRD CAUSE OF ACTION
### INFRINGEMENT OF '871 PATENT

98.     Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

99.     Defendants are not licensed (expressly or impliedly), nor are they otherwise authorized to make, use, offer for sale, or sell any products or services that embody the inventions of the '871 Patent.

100.     Defendants have infringed and continue to infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '871 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

101.     The Accused Instrumentalities, including features of Energy Vault's VaultOS and Jupiter's DOPTOP and Minerva software in connection with Jupiter's energy assets, practice each element of at least claim 1 of the '871 Patent.

102.    For example, the Accused Instrumentalities include the use of VaultOS, a system for managing power supplied to an electric power grid from a multiplicity of power supply sources, including BESS, using real-time operational data and market information to supply power to the grid as needed. VaultOS features the coordinator that orchestrates Jupiter's EMS architecture, facilitating communication over IP-based networks between at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter (including Jupiter's QSE server) and interoperable with VaultOS, and site-level controllers that control BESS assets.

103.    Jupiter uses VaultOS, DOPTOP, and/or Minerva to manage its resources. VaultOS includes grid elements constructed and configured for IP-based communication, via a coordinator comprising cloud-based software and site-level controllers, with at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter and interoperable with VaultOS, DOPTOP, and/or Minerva, and at least one database. Jupiter implements a QSE server in communication with VaultOS and/or DOPTOP software to issue power commands through VaultOS. In response to EMS telemetry and power commands received from the QSE server, VaultOS dispatches one or more energy resources by generating control instructions that cause BESS to discharge stored electrical energy to the electric power grid, while coordinating and managing IP-based communications between the server and the multiplicity of power supply sources.

104.    VaultOS in conjunction with DOPTOP, and/or Minerva further manages IP-addressable power storage devices that are automatically registered with the coordinator, communicates revenue-grade telemetry reflecting the actual amount of power available from the power supply sources, enables those sources to provide power to the grid based on the power

commands, and supports settlement and compensation for energy available and/or supplied to the electric power grid through data transmitted to the QSE server for ERCOT market settlement.

105. Accordingly, Jupiter's use of the VaultOS platform, DOPTOP, and/or Minerva in connection with Jupiter's BESS assets, performs IP-based communication of available power, dispatch of power supply sources based on received commands, and prioritization of resource dispatch based on source characteristics, thereby infringing at least claim 1 of the asserted patent.

106. Defendants have been aware of the '871 Patent since at least the filing of this Complaint.

107. Defendants' use of the Accused Instrumentalities and corresponding systems and services directly infringe at least claim 1 of the '871 Patent, literally or under the doctrine of equivalents, at least by using the Accused Instrumentalities and corresponding systems and services.

108. Since at least filing of this Complaint, Defendants have actively induced and continue to induce infringement of at least claim 1 of the '871 Patent by encouraging customers, market participants, and resource entities to use the Accused Instrumentalities—including the Accused EMS Software and related systems and services—in a manner that infringes the asserted claims. Defendants market and promote DOPTOP and Minerva as an energy management and optimization platform designed to (1) process real-time market data to inform dispatch decisions, and (2) utilize machine learning and artificial intelligence to forecast pricing and optimize related decisions. For example, Jupiter states that "DOPTOP absorbs historical, real-time and forward looking market data and recommends dispatch decisions."[24] Further, Jupiter markets Minerva as a "state of the art price forecasting and AI informing optimization decision[maker]", Minerva

---

[24] https://www.jupiterpower.io/.

"deploy[s] the latest in machine learning and artificial intelligence." *Id.* Additionally, on information and belief, Defendant Jupiter Power LLC and the Jupiter RE/DMEs intentionally induce the Jupiter QSE's infringement of this patent by providing training, technical support, personnel, grid resources, and computer and networking infrastructure to facilitate and encourage the use of infringing Accused EMS Software. The Jupiter QSE operates as the agent of the Jupiter RE/DMEs, acting at their direction and on their behalf in carrying out the accused activities. The Jupiter RE/DMEs possess a direct financial stake in the Jupiter QSE's infringing conduct, as the RE/DMEs derive economic benefit from the generation and sale of electricity that is managed, scheduled, and dispatched through the use of the Accused EMS Software.

109.   Defendants specifically intend that customers—including resource owners, operators, and market participants —use the Accused EMS Software in conjunction with QSE servers, site controllers, and Battery Energy Storage Systems to initiate power commands, coordinate and manage IP-based communications, communicate revenue-grade telemetry reflecting available power supply, dispatch power to the electric power grid, and prioritize dispatch order among multiple power supply sources based on characteristics such as State of Charge and operational constraints, and supports real-time financial settlement with ERCOT as described herein.

110.   Defendants' acts of induced infringement have caused and continue to cause direct infringement of at least claim 1 of the '871 Patent by Defendants' customers and partners, resulting in damage to Plaintiff. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

111. Plaintiff, its predecessors-in-interest, and/or any licensees have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '871 Patent.

**FOURTH CAUSE OF ACTION**
**<u>INFRINGEMENT OF '547 PATENT</u>**

112. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

113. Defendants are not licensed (expressly or impliedly) nor otherwise authorized to make, use, offer for sale, or sell any products or services that embody the inventions of the '547 Patent.

114. Defendants have infringed and continue to infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '547 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

115. The Accused Instrumentalities, including features of Energy Vault's VaultOS and Jupiter's DOPTOP and Minerva software in connection with Jupiter's energy assets, practice each element of at least claim 1 of the '547 Patent.

116. For example, the Accused Instrumentalities include the use of VaultOS, an EMS software system for managing power supplied to an electric power grid from a multiplicity of power supply sources, including BESS, using real-time operational data and market information to supply power to the grid as needed. VaultOS features the coordinator that orchestrates Jupiter's EMS architecture, facilitating communication over IP-based networks between at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter

(including Jupiter's QSE server) and interoperable with VaultOS, and site-level controllers that control BESS assets.

117. Jupiter uses VaultOS, DOPTOP, and/or Minerva to manage its resources. VaultOS includes grid elements constructed and configured for IP-based communication, via a coordinator comprising cloud-based software and site-level controllers, with at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter and interoperable with VaultOS, and at least one database. Jupiter implements a QSE server in communication with VaultOS and/or DOPTOP software to issue power commands through VaultOS.

118. In response to EMS telemetry and power commands received from the QSE server, VaultOS dispatches one or more energy resources by generating control instructions that cause BESS to discharge stored electrical energy to the electric power grid, while coordinating and managing IP-based communications between the server and the multiplicity of power supply sources.

119. VaultOS in conjunction with DOPTOP and/or Minerva further manages IP-addressable power storage devices that are automatically registered with the coordinator, communicates revenue-grade telemetry reflecting the actual amount of power available from the power supply sources, enables those sources to provide power to the grid based on the power commands, and supports settlement and compensation for energy available and/or supplied to the electric power grid through data transmitted to the QSE server for ERCOT market settlement.

120. Accordingly, Jupiter's use of the VaultOS platform, DOPTOP, and/or Minerva in connection with Jupiter's BESS assets, performs IP-based communication of available power, dispatch of power supply sources based on received commands, and prioritization of resource dispatch based on source characteristics, thereby infringing at least claim 1 of the asserted patent.

121. Defendants have been aware of the '547 Patent since at least the filing of this Complaint.

122. Defendants' use of the Accused Instrumentalities and corresponding systems and services directly infringe at least claim 1 of the '547 Patent, literally or under the doctrine of equivalents, at least by using the Accused Instrumentalities and corresponding systems and services.

123. Since at least filing of this Complaint, Defendants have actively induced and continue to induce infringement of at least claim 1 of the '547 Patent by encouraging customers, market participants, and resource entities to use the Accused Instrumentalities—including the Accused EMS Software and related systems and services—in a manner that infringes the asserted claims. Defendants market and promote DOPTOP and Minerva as an energy management and optimization platform designed to (1) process real-time market data to inform dispatch decisions, and (2) utilize machine learning and artificial intelligence to forecast pricing and optimize related decisions. For example, Jupiter states that "DOPTOP absorbs historical, real-time and forward-looking market data and recommends dispatch decisions."[25] Further, Jupiter markets Minerva as a "state of the art price forecasting and AI informing optimization decision[maker]", Minerva "deploy[s] the latest in machine learning and artificial intelligence." *Id.* Additionally, on information and belief, Defendant Jupiter Power LLC and the Jupiter RE/DMEs induce the Jupiter QSE's infringement of this patent by providing training, technical support, personnel, grid resources, and computer and networking infrastructure to facilitate and encourage the use of infringing Accused EMS Software. The Jupiter QSE operates as the agent of the Jupiter RE/DMEs, acting at their direction and on their behalf in carrying out the accused activities. The Jupiter

---

[25] https://www.jupiterpower.io/.

RE/DMEs possess a direct financial stake in the Jupiter QSE's infringing conduct, as the RE/DMEs derive economic benefit from the generation and sale of electricity that is managed, scheduled, and dispatched through the use of the Accused EMS Software.

124. Defendants specifically intend that customers—including resource owners, operators, and market participants —use the Accused EMS Software in conjunction with QSE servers, site controllers, and Battery Energy Storage Systems to initiate power commands, coordinate and manage IP-based communications, communicate revenue-grade telemetry reflecting available power supply, dispatch power to the electric power grid, and prioritize dispatch order among multiple power supply sources based on characteristics such as State of Charge and operational constraints, and supports real-time financial settlement with ERCOT as described herein.

125. Defendants' acts of induced infringement have caused and continue to cause direct infringement of at least claim 1 of the '547 Patent by Defendants' customers and partners, resulting in damage to Plaintiff. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

126. Plaintiff, its predecessors-in-interest, and/or any licensees have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '547 Patent.

**FIFTH CAUSE OF ACTION**
**INFRINGEMENT OF '849 PATENT**

127. Plaintiff incorporates and realleges all of the above paragraphs as though fully set forth herein.

128.    Defendants are not licensed (expressly or impliedly), nor otherwise authorized, to make, use, offer for sale, or sell any products or services that embody the inventions of the '849 Patent.

129.    Defendants have infringed and continue to infringe, either literally and/or under the doctrine of equivalents, one or more claims of the '849 Patent in violation of 35 U.S.C. § 271 in this District and elsewhere in the United States and will continue to do so unless enjoined by this Court.

130.    The Accused Instrumentalities, including features of Energy Vault's VaultOS and Jupiter's DOPTOP and Minerva software in connection with Jupiter's energy assets, practice each element of at least claim 1 of the '849 Patent.

131.    For example, the Accused Instrumentalities include the use of VaultOS, an EMS software system for electric power grid element and network management that connects BESS and other distributed energy resources to monitor, manage, and control real-time energy usage and production through a networked architecture. VaultOS features the coordinator that orchestrates Jupiter's EMS architecture, facilitating communication over IP-based networks between at least one server, including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter (including Jupiter's QSE server) and interoperable with VaultOS, and site-level controllers that control BESS assets.

132.    Jupiter uses VaultOS, DOPTOP, and/or Minerva to manage its resources. Jupiter implements a QSE server in communication with VaultOS and/or DOPTOP software to issue power commands through VaultOS directing the BESS to discharge electricity to the electric power grid. VaultOS includes grid elements constructed and configured for IP-based communication, via a coordinator comprising cloud-based software and site-level controllers, with at least one server,

36

including one or more cloud-based or market-facing servers operated by or on behalf of Jupiter and interoperable with VaultOS, DOPTOP, and/or Minerva and at least one database. Through this architecture, operational and telemetry data from BESS are communicated to Jupiter's QSE server and associated databases using IP-based SCADA communications.

133.    The VaultOS, DOPTOP, and/or Minerva ("coordinator") communicates messages to the server to register grid elements with the electric power grid, after which the grid elements are automatically transformed into active grid elements. Once registered, the active grid elements send telemetry messages to, and receive control messages from, the server via the coordinator, enabling ongoing monitoring, dispatch, and control of battery storage resources.

134.    VaultOS, DOPTOP, and/or Minerva stores operational status data for each active grid element for defined time intervals, controls grid operations including energy flows, operating reserves, and grid stabilization, and transmits messages identifying dispatched resources and measured quantities reflecting increases in power supply or reductions in consumption. These messages include grid element identifiers, functions, capacities, and measured power values used to execute and verify grid services, thereby infringing at least claim 1 of the '849 Patent.

135.    Defendants have been aware of the '849 Patent since at least the filing of this Complaint.

136.    Defendants' use of the Accused Instrumentalities and corresponding systems and services directly infringe at least claim 1 of the '849 Patent, literally or under the doctrine of equivalents, at least by using the Accused Instrumentalities and corresponding systems and services.

137.    Since at least filing of this Complaint, Defendants have actively induced and continue to induce infringement of at least claim 1 of the '849 Patent by encouraging customers,

37

market participants, and resource entities to use the Accused Instrumentalities—including the Accused EMS Software and related systems and services—in a manner that infringes the asserted claims. Defendants market and promote DOPTOP and Minerva as an energy management and optimization platform designed to (1) process real-time market data to inform dispatch decisions, and (2) utilize machine learning and artificial intelligence to forecast pricing and optimize related decisions. For example, Jupiter states that "DOPTOP absorbs historical, real-time and forward-looking market data and recommends dispatch decisions."[26] Further, Jupiter markets Minerva as a "state of the art price forecasting and AI informing optimization decision[maker]", Minerva "deploy[s] the latest in machine learning and artificial intelligence." *Id.* Additionally, on information and belief, Defendant Jupiter Power LLC and the Jupiter RE/DMEs induce the Jupiter QSE's infringement of this patent by providing training, technical support, personnel, grid resources, and computer and networking infrastructure to facilitate and encourage the use of infringing Accused EMS Software. The Jupiter QSE operates as the agent of the Jupiter RE/DMEs, acting at their direction and on their behalf in carrying out the accused activities. The Jupiter RE/DMEs possess a direct financial stake in the Jupiter QSE's infringing conduct, as the RE/DMEs derive economic benefit from the generation and sale of electricity that is managed, scheduled, and dispatched through the use of the Accused EMS Software. Defendants specifically intend that customers—including resource owners, operators, and market participants — use the Accused EMS Software in conjunction with QSE servers, site controllers, and Battery Energy Storage Systems to initiate power commands, coordinate and manage IP-based communications, communicate revenue-grade telemetry reflecting available power supply, dispatch power to the electric power grid, and prioritize dispatch order among multiple power supply sources based on

---

[26] https://www.jupiterpower.io/.

characteristics such as State of Charge and operational constraints, and supports real-time financial settlement with ERCOT as described herein.

138.    Defendants' acts of induced infringement have caused and continue to cause direct infringement of at least claim 1 of the '849 Patent by Defendants' customers and partners, resulting in damage to Plaintiff. Defendants are therefore liable to Plaintiff under 35 U.S.C. § 284 for damages in an amount that adequately compensates Plaintiff for Defendants' infringement, but no less than a reasonable royalty.

139.    Plaintiff, its predecessors-in-interest, and/or any licensees have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '849 Patent.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A.    That this Court adjudge and decree that Defendants have been, and are currently, infringing each of the Asserted Patents;

B.    That this Court award damages to Plaintiff to compensate it for Defendants' past infringement of the Asserted Patents, through the date of this trial in this action, and damages for future infringement of the Asserted Patents, through the expiration dates of the Asserted Patents;

C.    That this Court award pre- and post-judgment interest on such damages to Plaintiff;

D.    That this Court order an accounting of damages incurred by Plaintiff from six years prior to the date this lawsuit was filed through the entry of a final, non-appealable judgment;

39

E.       That this Court determine that this patent infringement case is exceptional and award Plaintiff its costs and attorneys' fees incurred in this action;

F.       That this Court enter a permanent injunction enjoining Defendants from further acts of infringement of the Asserted Patents through the use, operation, or control of the accused instrumentalities, or any colorable variation thereof, for the remaining terms of the Asserted Patents;

G.       That this Court award increased damages under 35 U.S.C. § 284; and

H.       That this Court award such other and further relief as the Court deems just and equitable.

Dated: March 27, 2026            Respectfully submitted,

*/s/ Mark D. Siegmund*
Mark D. Siegmund
TX Bar No. 24117055
msiegmund@cjsjlaw.com
Shuya "Grace" Yang
TX Bar No. 24144144
gyang@cjsjlaw.com
CHERRY JOHNSON SIEGMUND JAMES P.C.
7901 Fish Pond Rd, Second Floor,
Waco, TX 76710
Telephone: 254.732.2242
Facsimile: 866.627.3509

William D. Ellerman
TX Bar No. 24007151
wellerman@cjsjlaw.com
Ari Rafilson
TX Bar No. 24060456
arafilson@cjsjlaw.com
Brett Mangrum
TX Bar No. 24065671
bmangrum@CJSJLAW.com
CHERRY JOHNSON SIEGMUND JAMES P.C.
8140 Walnut Hill Ln, Suite 105
Dallas, TX 75231
Telephone: 254.732.2242
Facsimile: 866.627.3509

Christopher C. Campbell
DC Bar No. 444262
ccampbell@cahill.com
Britton F. Davis
CO Bar No. 43909
bdavis@cahill.com
Alfonso Garcia Chan
TX Bar No. 24012408
achan@cahill.com
Raphael Chabaneix
TX Bar No. 24118352
rchabaneix@cahill.com
Halima Shukri Ndai
TX Bar No. 24105486
hndai@cahill.com
Cahill Gordon & Reindel LLP
900 16th Street, N.W., Suite 500
Washington, D.C. 20006
Telephone: 202.862.8900

***Attorneys for Plaintiff Causam Enterprises, Inc.***

41